Kristy **GORMAN, Jamie Gorman, Individually and as Representative of the Estate of Sterling Scott Gorman, Scott Gorman, Jr., and Jamie Gorman, II, Appellants,**

v.

**NGO H. MENG a/k/a Meng H. Ngo and Garry Hayden, Appellees.**

No. 05–09–01189–CV.

Court of Appeals of Texas, Dallas.

March 1, 2011.

Ron McCallum, Ted B. Lyon & Associates, Mesquite, TX, for Appellants.

William Chu, Law Offices of William Chu, Dallas, TX, for Appellees.

Before Justices BRIDGES, LANG-MIERS, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellants Kristy Gorman, Jamie Gorman, Individually and as Representative of the Estate of Sterling Scott Gorman, Scott Gorman, Jr., and Jamie Gorman, II sued Meng H. Ngo [1] and Garry Hayden, alleging Ngo's and Hayden's negligence caused the death of Sterling Scott Gorman. In eight issues, appellants assert the trial court erred by entering a take nothing judgment against them because (1) chapter 95 of the civil practice and remedies code does not preclude appellants from recovering against Ngo, (2) Ngo breached his common law duty to warn Scott Gorman of hidden defects, and (3) Hayden's breach of his common law duty to make the premises safe proximately caused Gorman's death. We affirm the trial court's judgment.

### Background

Ngo met Hayden's son when they were both taking heating, ventilating, and air conditioning (HVAC) installation and repair classes at ATI. Ngo also owned a convenience store. Ngo quit attending ATI after approximately six months and, sometime later, requested that Hayden's son install a walk-in cooler in the store. Because Hayden's son did not have refrigeration experience, Hayden helped his son install the walk-in cooler. Hayden had been licensed to perform HVAC installation and repair, but relinquished the license when he became disabled. Hayden had previously installed between ten and fifteen walk-in coolers and had never experienced any problems with the installations. Hayden had performed some previous work for Ngo.

Ngo purchased the walk-in cooler from his ex-wife. Hayden purchased an air conditioner condenser and modified it to work as a refrigeration unit. Hayden placed the condenser outside the convenience store on a pallet and wired it to the walk-in cooler. Hayden used existing circuits at the store and did not install either an electrical disconnect or a ground on the condenser. Ngo did not assist Hayden during the installation of the walk-in cooler or the condenser.

Shortly after the walk-in cooler was installed, customers in the store began complaining they were being shocked when they touched the doors to the walk-in cooler. Further, the lessee of the store was knocked to the floor when he was shocked while mopping the floor next to the cooler. The lessee complained to Ngo at least three times that the walk-in cooler was shocking people.

Each time the lessee complained, Ngo asked Hayden to investigate the problem. Hayden visited the store on three occasions, but the doors to the walk-in cooler did not shock him or show any signs of being energized. Hayden was unable to determine the cause of the problem during any of his three visits to the store. After his third trip, Hayden testified he cut the power to the walk-in cooler and the condenser, placed tape over the breakers, placed tags in the breaker box instructing that the power not be turned on, and told the employees of the store not to touch the breakers or turn on the power to the walk-in cooler or the condenser. Hayden also

---

1. Ngo was referred to throughout the pleadings and the trial as both Meng H. Ngo and Ngo H. Meng. Ngo testified his name was Meng Ngo and for consistency we will refer to him as Ngo throughout this opinion.

suggested that Ngo hire a licensed electrician to investigate the problem.

Ngo contacted Gorman, who installed walk-in coolers and freezers, to investigate the problem. Gorman had performed other work for Ngo. He had also installed twenty to thirty walk-in coolers at other locations. Ngo testified that Gorman represented that he was a licensed electrician, but appellants denied Gorman ever represented that he was an electrician. According to Ngo, he told Gorman the walk-in cooler was shocking people.

Gorman and his brother, Gary, went to the convenience store. According to Gary, Ngo told Gorman that the low-temperature heater units on the walk-in cooler doors were not working properly. Using an ohm meter, Gorman determined the cooler doors were energized. Gorman then turned off the breakers to the walk-in cooler and again checked the cooler doors. The cooler doors were no longer energized. Gary did not know whether Gorman turned off the breakers to the condenser outside. The two men went outside the store to check the condenser. According to Gary, Gorman was checking the condenser to "find out where the problem was." Gary testified there was standing water around the condenser. Gorman asked Gary to hand him a tool so that Gorman could open the condenser cover. As Gary started to do so, Gorman picked up a control box that was connected to the condenser. The box was energized, and Gorman was electrocuted. Gorman died from his injuries.

Tony Perryman, a licensed professional engineer and journeyman electrician, investigated the walk-in cooler installation following Gorman's death. According to Perryman, the installation violated the National Electrical Code. Perryman testified that the walk-in cooler and the condenser were connected and that neither was grounded. The parts Hayden added to the condenser "shorted out" inside the condenser and, because the condenser was not grounded, it became energized. Gorman was electrocuted because neither the walk-in cooler nor the condenser was grounded. In Perryman's opinion, it was impossible to determine by looking at the condenser that it was not grounded. Perryman testified that Gorman would not have been electrocuted if the breaker was off. However, it is common to leave the power on during the "troubleshooting process." Perryman defined "troubleshooting" as "trying to find out if there's a problem."

During closing argument, the trial court questioned appellants' counsel about whether appellants had established Ngo's liability under chapter 95 of the civil practice and remedies code relating to a property owner's liability for the acts of an independent contractor. Appellants filed a post-trial brief arguing (1) the condenser was not an improvement or a fixture; (2) chapter 95 was an affirmative defense that was not pleaded by Ngo; and (3) there was a fact question as to Ngo's control and actual knowledge of the condition. The trial court entered a take nothing judgment against appellants.

At appellants' request, the trial court entered findings of fact and conclusions of law determining, as relevant here, that (1) section 95.003 of the civil practice and remedies code required appellants to prove Ngo had some control over Gorman's work; (2) appellants were required to prove Ngo had actual knowledge of the danger; (3) appellants did not prove that Ngo was liable under chapter 95 because Ngo did not exercise control over how Gorman performed his job or have actual knowledge of the dangerous condition that killed Gorman; (4) chapter 95 does not have to be pleaded as an affirmative defense and proving liability under chapter

95 was appellants' burden; and (5) there was no recognized common law duty extending from Hayden to Gorman and, even if there was such a duty, appellants failed to prove Hayden's conduct caused Gorman's death. Appellants filed this appeal.

### Chapter 95 of the Civil Practice and Remedies Code

■ In their first through fifth issues, appellants assert the trial court erred by entering a take nothing judgment in favor of Ngo because (1) chapter 95 is affirmative defense; (2) Ngo waived the affirmative defense by failing to plead it; (3) Ngo failed to meet his burden of proving the applicability of chapter 95; (4) chapter 95 does not apply to appellants' claims against Ngo; and (5) chapter 95 should be interpreted narrowly to apply only to claims defined by section 95.002. The applicability of a statute is a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 2157, 173 L.Ed.2d 1156 (2009) (construction of statute is question of law that is reviewed de novo); *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 83 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (whether chapter 95 applied to claims was an issue of statutory construction that appellate court reviewed de novo).

■ Chapter 95 of the civil practice and remedies code governs a property owner's liability for the acts of an independent contractor. As relevant here, the statute applies to a claim (1) against the owner of real property used primarily for business purposes, (2) caused by negligence, (3) that resulted in the death of a contractor, and (4) that arose from the condition or use of an improvement to real property where the contractor constructs, repairs, renovates, or modifies the improvement. TEX. CIV. PRAC. & REM.CODE ANN. §§ 95.001(1), (3), 95.002 (West 2005). Under chapter 95:

> A property owner is not liable for personal injury, death, or property damage to a contractor … who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* at § 95.003.

### Affirmative Defense

In their first issue, appellants assert that chapter 95 is an affirmative defense because it does not rebut the factual assertions of appellants' case; rather it establishes an independent reason why appellants should not recover. In their second issue, appellants argue Ngo waived the defense by failing to plead it.

"Although section 95.003 has been referred to in some opinions as a defense and as an affirmative defense, it is clear that a defendant need only establish that chapter 95 applies to him." *Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Once the defendant has shown that chapter 95 applies, the plaintiff:

> has the burden to establish both prongs of section 95.0003: (1) that the property owner exercised or retained some control over the manner in which the work was performed and (2) that the property

owner had actual knowledge of the danger and did not adequately warn of that danger. Those courts that have referred to the burden of proof required in establishing control and knowledge are consistent with this reading of the statute and have placed that burden on the plaintiff. We hold that, while it is the defendant's burden to establish the applicability of chapter 95 of the Texas Civil Practice and Remedies Code, it is the plaintiff's burden to prove the two prongs of section 95.003: control and knowledge.

*Id.* (internal citations omitted).

■ Appellants had the burden of proving control and knowledge under chapter 95. Accordingly, Ngo was not required to plead chapter 95 as an affirmative defense and did not waive the applicability of the statute by failing to plead it. *See id.; James v. Cousins Props. Tex., L.P.,* No. 03–06–00617–CV, 2008 WL 2220016, at *2 (Tex.App.-Austin May 30, 2008, no pet.) (mem. op.) ("The plaintiff must prove both of these elements [control and knowledge] before liability will be imposed on the owner."); *Arsement v. Spinnaker Exploration Co., LLC,* 400 F.3d 238, 246 (5th Cir.2005) ("Chapter 95's plain language does not require an affirmative pleading."). We overrule Ngo's first two issues.

### Applicability of Chapter 95

■ In their third issue, appellants argue Ngo failed to meet his burden of establishing chapter 95 applies "because he did not even suggest Chapter 95 during the entire course of the trial, did not present any evidence to show its applicability, and never once argued Chapter 95 during the entire proceeding." If chapter 95 applied to appellants' claims against Ngo, it was the substantive law that governed the case. *See Dyall v. Simpson Pasadena Paper Co.,* 152 S.W.3d 688, 710 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (en

banc) (plaintiff was "required to surmount the defense provided by Chapter 95 as to all of his claims that sounded in negligence"). Whether chapter 95 applied to appellants' claims against Ngo could be raised at any time, including after trial. *See Arsement,* 400 F.3d at 246–47 (premises owner not precluded from raising applicability of chapter 95 in post-trial motion even though case was tried on theory of common law negligence). Further, the trial court was required to determine the law applicable to the case and to apply that law to the facts. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding) (trial court has no discretion in determining what law is or applying law to facts).

The issue is not whether Ngo presented evidence or argument in the trial court about the applicability of chapter 95. Rather, we must determine, considering the record as a whole, whether the trial court erred by determining chapter 95 applies to appellants' claims against Ngo. We therefore turn to appellants' contention in their fourth issue that the trial court erred by applying chapter 95 to appellants' claims against Ngo.

■ For chapter 95 to apply to appellants' claims against Ngo, the evidence must show (1) Ngo owned real property that was used primarily for business purposes, (2) appellants sued for damages caused by Ngo's negligence, (3) that resulted in the death of a contractor, and (4) that arose from the condition or use of an improvement to real property where the contractor constructs, repairs, renovates, or modifies the improvement. It is undisputed that Ngo owned the property, the property was used for business purposes, Gorman was a contractor, appellants' claims are based on Ngo's alleged negligence, and appellants are seeking damages for Gorman's death. Appellants, however,

argue chapter 95 does not apply because the condenser was not an improvement to real property, Gorman did not construct, repair, renovate, or modify the condenser, and the condenser was not the improvement on which Gorman was working.

Relying on *Norris v. Thomas*, 215 S.W.3d 851, 854–55 (Tex.2007), appellants first contend the condenser was not an improvement to the property because it was not annexed to the realty and was not intended to be a permanent addition to realty. Appellants assert that because the condenser "was not mounted and was lying on the pallet upon which it came" and was being used for refrigeration, rather than air conditioning, "the condenser unit was not 'an improvement to real property' as required by Section 95.002."

In *Norris*, the Texas Supreme Court addressed whether a sixty-eight foot yacht qualified as a homestead under article XVI, sections 50 and 51 of the Texas Constitution and section 41.001(a) of the property code. The court concluded the yacht was not a homestead because it did not rest on land and did not have a requisite degree of physical permanency, immobility, and attachment to fixed realty. *Id.* at 859. In reaching this conclusion, the supreme court relied on *Sonnier v. Chisholm–Ryder Co.*, 909 S.W.2d 475, 479 (Tex. 1995) in noting that "personalty does not constitute an improvement until it is annexed to realty." *Norris*, 215 S.W.3d at 855. Further, "the annexed object cannot be deemed an improvement to land unless it is intended to be 'a permanent addition to the realty.'" *Id.* (quoting *Sonnier*, 909 S.W.2d at 481).

■■ An improvement includes all additions to the land other than trade fixtures that can be removed without injury to the property. *Sonnier*, 909 S.W.2d at 479; *Reames v. Hawthorne–Seving, Inc.*, 949 S.W.2d 758, 761 (Tex.App.-Dallas 1997, writ denied) ("The class of improvements is considered to be broader than that of fixtures, which are items of personalty that have become permanent parts of the realty to which they are affixed."); *Mendoza v. Clingfost*, No. 12–08–00315–CV, 2010 WL 827295, at *4 (Tex.App.-Tyler Mar. 10, 2010, no pet.) (mem. op.) (op. on reh'g). Whether personalty has been affixed to realty depends on (1) the mode and sufficiency of annexation; (2) the adaption of personalty to the use or purpose of realty; and (3) the intention of the owner. *Sonnier*, 909 S.W.2d at 479. The owner's intention is preeminent and the first two factors are evidence of intent. *Id.*

In this case, Ngo caused a walk-in cooler to be installed in the store. The condenser was placed on a pallet outside the building and was electrically connected to the cooler through the store's breaker box. Hayden modified the condenser to meet the store's need for a refrigeration system. The condenser and cooler were intended to serve the convenience store and to be operated on the premises. We conclude the installation of the walk-in cooler and the condenser evidenced Ngo's intent that the cooler and condenser be annexed to the realty. *See Sonnier*, 909 S.W.2d at 479; *Clark v. Vitz*, 190 S.W.2d 736, 738 (Tex. Civ.App.-Dallas 1945, writ ref'd) ("house trailer" placed on four wooden blocks with an electrical connection to a brick home was improvement because it "had been attached to and made a part of [the] homestead residence"). Accordingly, the condenser was an improvement under section 95.002(2) of the civil practice and remedies code.

Appellants next assert chapter 95 does not apply to their claims against Ngo because Gorman did not construct, repair, renovate, or modify the condenser. Rather, according to appellants, Gorman only attempted to inspect the unit—an activity not encompassed by chapter 95. In its

findings of fact, the trial court found that, after customers complained of being shocked by the walk-in cooler, Hayden inspected the cooler three times and could not find the problem. Ngo then contacted Gorman "to see if he would be willing to look at the walk-in cooler." Gorman agreed to "see if he could diagnose the electrical problem." These findings are supported by Hayden's, Ngo's, and Gary Gorman's testimony.

Appellants have not challenged the trial court's findings on appeal. Accordingly, because these findings are supported by evidence and a contrary finding is not established as a matter of law, the findings are binding on this Court. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986); *Young v. Gumfory*, 322 S.W.3d 731, 741 (Tex.App.-Dallas 2010, no pet.). Based on the trial court's findings, we conclude Gorman was on the property for the purpose of determining what was causing the electrical shock to customers of the store coming in contact with the walk-in cooler, the first step of the repair process. *See Francis*, 130 S.W.3d at 85 ("The record reflects that the purpose of the coiled-tubing washout was to rehabilitate the well so that the flow of gas could increase. Accordingly, we hold that the coiled-tubing washout Francis was performing qualified as either repair or renovation of the well.").

Relying on *Hernandez v. Brinker International, Inc.*, 285 S.W.3d 152 (Tex. App.-Houston [14th Dist.] 2009, no pet.) (plurality op.), appellants finally contend chapter 95 does not apply because Gorman was not injured by the improvement he was at the premises to repair. In *Hernandez*, the plaintiff was hired to replace a compressor motor in an air conditioner on the roof of a restaurant. While the plaintiff was moving the compressor from the unit, the roof collapsed, and the plaintiff was injured when the right side of his body fell through the opening. Justice Brown, in a plurality opinion, concluded chapter 95 did not apply "when the improvement the condition or use of which gives rise to the injury claim is not the same improvement the contractor was at the premise to address at the time of injury." *Id.* at 157–58. Justice Anderson concurred in the judgment on the basis the defendant failed to establish in its motion for summary judgment that it was the property owner. *Id.* at 164. Justice Yates dissented, concluding the statute was ambiguous on whether the "improvement contemplated is the overall structure, part of the structure, or both." *Id.* at 165. Justice Yates would have concluded chapter 95 applied because the plaintiff's injury was sufficiently related to the work for which he was hired. *Id.* at 166.

The plurality opinion of the Fourteenth Court of Appeals in *Hernandez* appears to be a departure from the existing case law of other intermediate courts of appeals. *See Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 201 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) ("The statute does not require that the defective condition be the object of the contractor's work."); *see also Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 398 (Tex.App.-El Paso 2008, pet. denied) ("Courts have held that chapter 95 applies, despite the fact that the object causing the injury is not itself an improvement, where the injury arises from work being done on an improvement."); *Moreno v. BP Am. Prod. Co.*, No. 04–08–00036–CV, 2008 WL 4172248, at *2 (Tex.App.-San Antonio Sept. 10, 2008, pet. denied) (mem. op.) ("Although the injuries alleged must relate to work being done by the injured party, Chapter 95 does not require that the improvement's condition or use actually cause the injury."); *James*, 2008 WL 2220016, at *2 (chapter 95 applied when truck driver who delivered materials to contractor was injured when

portable toilet rolled off loading dock); *Clark v. Ron Bassinger, Inc.*, No. 07–03–00291–CV, 2006 WL 229901, at *2 (Tex. App.-Amarillo 2006, no pet.) (memo. op.) ("As in Fisher, although the covered skylight opening was not the object of Clark's work, it was an unsafe part of his workplace and his injury arose from the failure to provide him a safe workplace. The circumstances of Clark's injury, therefore, come within the reach of Chapter 95."); *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 132 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (" 'failure to provide a safe workplace' under section 95.003, means that, although the injuries alleged must relate to work being done by the injured party, the statute does not require that the injury-producing defect must be the object of the injured party's work"); *Francis*, 130 S.W.3d at 83 ("The 'failure to provide a safe workplace' means that the injuries must relate to work being done by the injured party, but the injury-producing defect need not be the object of the injured party's work."). However, we need not decide the issue in this case. Gorman was on the property to determine why customers of the store were being shocked when coming into contact with the doors of the walk-in cooler. The condenser was connected to the walk-in cooler and was intended to make the walk-in cooler functional. Gorman determined he needed to inspect the condenser in order to determine why the doors of the walk-in cooler were shocking customers of the store. We conclude Gorman was not injured by an improvement separate from the improvement that was the object of his work. *See Mendoza*, 2010 WL 827295, at *4 ("Because the tires were part of the boundary of the track, Hernandez was repairing, renovating, or modifying the improvement when he had his accident.")

In their fifth issue, appellants argue the trial court erred by failing to narrowly construe chapter 95 and by failing to ap-

ply specific statutory provisions over general ones. Specifically, appellants argue the trial court improperly (1) concluded appellants had the burden of proof under chapter 95, (2) applied chapter 95 to "all premises liability negligence claims without requiring the defense to either plead the statute, argue the applicability of the statute, provide evidence of the applicability of the statute, or even at least reference the statute during trial," and (3) applied chapter 95 when the claims did not arise from the use of improvement to real property or from the contractor constructing, repairing, renovating, or modifying the improvement. We have addressed these arguments in response to appellants' first four issues.

The trial court did not err by determining chapter 95 applied to appellants' claims against Ngo. Accordingly, we overrule appellants' third, fourth, and fifth issues.

### Common Law

▮▮▮ In their sixth issue, appellants contend the trial court erred by entering a take nothing judgment in favor of Ngo because Ngo is liable under common law. Common law imposes a duty on a premises owner to "inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist." *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex.1999) (per curiam). However, the "statutory 'actual knowledge' standard in chapter 95 replaces the pre-chapter 95 standard of constructive knowledge." *James*, 2008 WL 2220016, at *2 (citing *Phillips*, 186 S.W.3d at 133). We have already concluded the trial court did not err by applying chapter 95 to appellants' claims against Ngo. Accordingly, chapter 95 is appellants' exclusive remedy against Ngo, and Ngo is not liable to ap-

pellants under common law. *See Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 126 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) (chapter 95 preempted common law claims); *Phillips*, 186 S.W.3d at 132 (chapter 95 preempted plaintiff's common law claims); *Francis*, 130 S.W.3d at 88 ("We agree with the trial court that chapter 95 controls this case, is Francis's exclusive remedy against Coastal, and precludes common-law negligence liability in Coastal."). We overrule appellants' sixth issue.

### Claims Against Hayden

In their seventh and eighth issues, appellants argue the trial court erred by entering a take nothing judgment in favor of Hayden because Hayden breached his duty to make the premises safe and this breach proximately caused Gorman's death. Appellants assert the trial court's judgment in favor of Hayden was "clearly wrong and unjust." We therefore conclude appellants are challenging the factual sufficiency of the evidence to support the trial court's judgment.

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (per curiam). We must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

A person not in control of real property may owe a duty of due care if that person either created a dangerous condition or agreed to make safe a known dangerous condition. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex.1997). In

its findings of fact, the trial court found "Hayden also powered down the cooling condensor [sic] and cooler, instructing Ngo and the store owner not to turn on the cooler or condenser until the unit could be inspected by an electrician. Hayden also put a note on the circuit box not to turn the cooler or condensor [sic] back on." Although the power to the condenser and cooler were on when Gorman arrived, "there was no evidence as to who turned the unit on." These findings are supported by Hayden's and Gary Gorman's testimony, and appellants have not challenged these findings on appeal. Because these findings are supported by evidence and a contrary finding is not established as a matter of law, the findings are binding on this Court. *McGalliard*, 722 S.W.2d at 696; *Young*, 322 S.W.3d at 741.

The trial court's findings support the conclusions that Hayden took steps to make the premises safe and that, but for someone other Hayden turning on the electricity to the walk-in cooler and the condenser, Gorman would not have been killed. Accordingly, the findings support a conclusion that Hayden exercised "due care" and that appellants failed to prove Hayden's conduct proximately caused Gorman's death. We conclude the evidence is factually sufficient to support the trial court's judgment in favor of Hayden. We overrule appellants' seventh and eighth issues.

We affirm the trial court's judgment.