*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# OPINION

No. 04-11-00289-CV

Pedro **COVARRUBIAS**,
Appellant

v.

**DIAMOND SHAMROCK REFINING COMPANY, LP**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-05866
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  January 4, 2012

AFFIRMED

Appellant Pedro Covarrubias was injured while working in appellee's, Diamond Shamrock Refining Company, LP ("Diamond Shamrock"), refinery. Covarrubias sued Diamond Shamrock for damages arising from these injuries. The trial court granted Diamond Shamrock's traditional and no evidence motions for summary judgment. On appeal, Covarrubias contends the trial court erred by granting Diamond Shamrock's motions for summary judgment. We affirm.

BACKGROUND

Diamond Shamrock contracted with general contractor Matrix Engineering, LTD ("Matrix") to install a new gasoline desulfurization unit ("GDU") in one of Diamond Shamrock's refineries. In turn, Matrix assigned a portion of the work to subcontractor A&B Builders ("A&B"), which was to install a carbon steel line in the pipe rack of the GDU. Covarrubias, an A&B employee, was tasked with inspecting the welds made by A&B employees on the carbon steel line. To perform this inspection, Covarrubias used an electric-powered scissor lift to raise him up to the welds. As Covarrubias was lifting himself, the lift handrail struck a nearby one-half inch nipple,[1] causing it to break and hydrocarbons to be released. Covarrubias sustained second degree burns.

A report of the incident, which was part of the summary judgment evidence, stated the nipple connection could have been strengthened by back-welding the nipple. The report also stated that the unguarded nipple should have been recognized as an extremely dangerous condition. An engineering report was also part of the summary judgment evidence. The engineering report stated the instrument tap (nipple) that broke should have been removed when it became apparent it would not be used. The report stated that instead, it remained in place as a hazard for over thirty years.

Covarrubias sued Diamond Shamrock for premises liability and negligence. Diamond Shamrock filed traditional and no evidence motions for summary judgment. In its traditional motion for summary judgment, Diamond Shamrock asserted it was entitled to judgment as a matter of law because chapter 95 of the CPRC was applicable, and as a matter of law, Diamond Shamrock did not retain control over the manner in which Covarrubias's work was performed, which is one of the elements of a chapter 95 claim. *See id.* at § 95.003. In its no evidence

---

[1] A nipple is a fitting, consisting of a short piece of pipe, used for connecting two other fittings.

motion for summary judgment, Diamond Shamrock asserted it was entitled to judgment as a matter of law because there was no evidence to establish the requisite elements of Covarrubias's cause of action, which was governed by chapter 95. The trial court subsequently granted Diamond Shamrock's motions for summary judgment. Covarrubias then perfected this appeal.

On appeal, Covarrubias contends the trial court erred by granting Diamond Shamrock's motions for summary judgment because: (1) chapter 95 does not apply to his claims because he was injured by an improvement different from the one he was hired to repair; and (2) in the event we find chapter 95 applies, Diamond Shamrock exercised some control over the manner in which A&B's work was performed, and had actual knowledge of the dangerous condition but failed to adequately warn.

ANALYSIS

*Standard of Review*

Both traditional and no evidence motions for summary judgment are reviewed de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under Rule 166a(c) of the Texas Rules of Civil Procedure, when reviewing a traditional motion for summary judgment, we must determine whether the movant for summary judgment in the trial court showed no genuine issue of material fact existed, and therefore, was entitled to judgment as a matter of law. *Browning v. Prostok*, 165 S.W.3d 336, 355 (Tex. 2005). In order to make this determination, we must take evidence favorable to the nonmovants as true, credit the nonmovant with all reasonable inferences, and resolve any conflicts in the nonmovant's favor. *Fort Worth Osteopathic Hosp. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).

When reviewing a no evidence motion for summary judgment, "we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and

inferences." *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Under Rule 166a(i), the movant must first assert that no evidence exists as to one or more elements of a claim the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Once the movant has alleged no evidence exists as to one or more elements, the burden is then shifted to the nonmovant to present more than a scintilla of evidence which raises a genuine issue of material fact on each of the challenged elements. *Wal-Mart Stores*, 92 S.W.3d at 506. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). If the nonmovant fails to produce more than a scintilla of evidence, there is no need to analyze whether the movant's proof satisfies the Rule 166a(c)—traditional motion for summary judgment—burden. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

In order to come under the protections of chapter 95, the defendant must establish its applicability. TEX. CIV. PRAC. & REM. CODE ANN. § 95.002; *Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Once the defendant has established chapter 95 applies, the plaintiff has the burden of proof to establish the two prongs of chapter 95.003. *Rueda*, 179 S.W.3d at 111. Those prongs are whether:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the rights to order the work to start or stop or to inspect progress or receive reports; and

> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.003.

*Applicability of Chapter 95*

Chapter 95 applies only to a claim:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
>
> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.002. In his first issue, Covarrubias contends chapter 95 does not apply in this case because it is inapplicable where a subcontractor's employee is hired to repair or modify an improvement and is injured by a different improvement from the one he was hired to repair. Diamond Shamrock asserted below, and argues here, it applies as a matter of law. We agree.

Only a few courts of appeals have addressed this issue. Covarrubias relies on *Hernandez v. Brinker Int'l, Inc.* for the proposition that chapter 95 does not apply to a subcontractor's employee's claims when the improvement or use which gives rise to the injury is not the same improvement the subcontractor was on the premises to repair at the time of injury. 285 S.W.3d 152, 157-58 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (plurality opinion). In *Hernandez*, the contractor's employee was making repairs to an air conditioner on the roof of the building. *Id.* at 153-54. As the employee was carrying an air conditioner compressor off of the roof, the roof collapsed. *Id.* at 154. Evidence at trial showed that a week before the injury, the property owner had scheduled a roof replacement due to some leaking and a soft spot in the roof; the property owner failed to warn the employee there were problems with the roof. *Id.* The Fourteenth Court of Appeals, with one justice dissenting, held that because the employee was hired to repair the air conditioner, and not the roof, chapter 95 did not apply to his claims. *Id.* at

161; *but see Gorman v. Meng*, 335 S.W.3d 797, 805-06 (Tex. App.—Dallas 2011, no pet.) (refusing to reach issue of applicability of chapter 95, but stating, "[t]he plurality opinion of the Fourteenth Court of Appeals in *Hernandez* appears to be a departure from the existing case law of other intermediate courts of appeals."). The court in the *Hernandez* case essentially held that in order for chapter 95 to apply, the contractor's employee must have been injured by the improvement he was hired to repair.

On the other hand, two courts of appeals have held chapter 95 applies even if the contractor's employee was injured by an improvement separate from the improvement the employee was on the premises to repair. *See Clark v. Ron Bassinger*, No. 07-03-0291-CV, 2006 WL 229901 (Tex. App.—Amarillo Jan. 31, 2006, no pet.) (mem. op.); *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

In *Clark*, the employee of an independent plumbing contractor fell through a covered skylight while working on the roof. *Clark*, 2006 WL 229901, at *1. The court held:

> Clark was engaged in the construction of an improvement to real property. His duties required him to work on the roof. As in *Fisher*, although the covered skylight was not the object of Clark's work, it was an unsafe part of his workplace and his injury arose from the failure to provide him a safe workplace. The circumstances of Clark's injury, therefore, come within reach of Chapter 95.

*Id.* at *2.

In *Fisher*, the employee of a contractor hired to repair a roof-mounted air conditioning unit fell from a ladder he was using to reach the roof. *Fisher*, 16 S.W.3d at 200. The court held chapter 95 applied to the employee's claims because chapter 95 does not require the defective condition causing the injury be the "object" of the contractor's work. *Id.* at 201. The court further explained that because the ladder "provided appellant a means to reach his work site[,]"

chapter 95 applied because the injury stemmed from a failure to provide a safe workplace. *Id.* at 202.

Here, as in both *Fisher* and *Clark*, Covarrubias was not injured by the improvement he was hired to repair. But, as in *Fisher* and *Clark*, Covarrubias was injured while accessing his work space. *See Clark*, 2006 WL 229901, at \*2 (explaining employee fell through skylight while on roof to access plumbing work); *Fisher*, 16 S.W.3d at 201 (explaining employee fell off ladder while accessing roof to repair air conditioner); *see also Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 132 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[T]he scaffolding from which Stewart fell was sufficiently related to Stewart's injuries to bring Dow within the protections of chapter 95."). Covarrubias needed to use the scissor lift to access his work space, and although the nipple was not the object of Covarrubias's work, it was an unsafe part of his workplace. Accordingly, we hold, as a matter of law, chapter 95 applies to Covarrubias's claims.

### *Control and Knowledge*

In his second issue, Covarrubias contends the trial court erred by granting Diamond Shamrock's motion for summary judgment because he presented more than a scintilla of evidence that Diamond Shamrock exerted some control over his work, and that Diamond Shamrock had actual knowledge of the faulty nipple. In its traditional motion for summary judgment, Diamond Shamrock presented evidence to establish, as a matter of law, it did not exercise control over Covarrubias's work. And, in its no evidence motion for summary judgment, Diamond Shamrock asserted there was no evidence of any required elements of a chapter 95 claim, which includes the exercise of control and knowledge.

Under chapter 95, Diamond Shamrock, as the property owner, is not liable for Covarrubias's injuries unless Diamond Shamrock exercised or retained some control over the

manner in which Covarrubias's work was performed, and Diamond Shamrock had actual knowledge of the faulty nipple which caused Covarrubias's injuries. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003.

To defeat Diamond Shamrock's no evidence motion for summary judgment, Covarrubias had to produce more than a scintilla of evidence that Diamond Shamrock retained control over the manner in which Covarrubias's work was performed. *See id.* § 95.003(1). Control can be established through either a contractual right of control or an exercise of actual control. *Dow Chem. Co. v. Bright*, 86 S.W.3d 602, 606 (Tex. 2002); *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). "The owner, to be liable, must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way." *Ellwood Tex. Forge*, 214 S.W.3d at 700. Covarrubias had to produce more than a scintilla of evidence that Diamond Shamrock did more than order the work to start and stop, inspect progress, receive reports, or recommend a safe manner for Covarrubias to perform his work. *See id.*

Diamond Shamrock and Matrix, the contractor, had a contract that stated:

> Contractor shall have responsibility for and control over the details and means for performing the Work . . . . Anything in this Agreement which may appear to give [Diamond Shamrock] the right to direct Contractor as to the details of the performance of the Work or to exercise a measure of control over Contractor, shall mean that Contractor shall follow the desires of [Diamond Shamrock] only as to the intended results of the Work.

Covarrubias did not produce any evidence to counter this contention. Therefore, we hold, as a matter of law, Diamond Shamrock did not have contractual control of the way in which A&B, the subcontractor, was to perform its work.

Regarding actual control, Covarrubias argues he produced more than a scintilla of evidence that Diamond Shamrock asserted control over A&B's work by requiring A&B to obtain work-safety permits from Diamond Shamrock. Richard R. Robertson, a staff project engineer at the refinery, testified Diamond Shamrock requires any contractor performing work in the refinery to first obtain a work-safety permit. During this process, Diamond Shamrock informs the contractors what equipment and personal protection are required for safety purposes. Beyond these requirements, Robertson stated contractor's employees were to follow whatever work their contractor assigned and were to abide by their company's health and safety policies, not Diamond Shamrock's.

Implementing a work permit system is no evidence of a property owner's actual control. *Dow Chemical*, 89 S.W.3d at 608-609 (requiring a safe work permit is not evidence contractor was not free to do work in its own way, nor is it evidence property owner "controlled the method of work or its operative details."); *see Fitz v. Days Inns Worldwide, Inc.*, 147 S.W.3d 467, 473 (Tex. App.—San Antonio 2004, pet. denied) ("Merely exercising or retaining a general right to recommend a safe manner for the independent contractor to perform their work is not enough to subject a premises owner to liability."); *Ellwood Tex. Forge*, 214 S.W.3d at 700 ("Nor is it enough to recommend a safe manner for the independent contractor's employees to perform the work.").

Furthermore, in his deposition, Covarrubias stated no one from Diamond Shamrock ever told him how to do his job and that A&B controlled his actions, supervised him, and told him what to do at all times. Accordingly, we hold Covarrubias did not present more than a scintilla of evidence that Diamond Shamrock asserted actual control over A&B's work, and therefore Covarrubias's work.

After reviewing the summary judgment record, we find Covarrubias failed to produce more than a scintilla of evidence showing Diamond Shamrock exerted contractual or actual control over his work. Because Covarrubias failed in his burden regarding the first prong of chapter 95.003, we need not address whether Diamond Shamrock had actual knowledge of the dangerous condition. We hold the trial court did not err by determining chapter 95 applied, which was asserted in Diamond Shamrock's traditional motion for summary judgment, nor did the trial court err in granting Diamond Shamrock's no evidence motion for summary judgment.

## CONCLUSION

Based on the foregoing, we hold Covarrubias's claims are subject to chapter 95 of the CPRC. We also hold Covarrubias did not meet his burden in producing more than a scintilla of evidence that Diamond Shamrock exerted contractual or actual control over his work. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice