

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00729-CV

Jesus Junior **GARCIA**,
Appellant

v.

**SAN MIGUEL ELECTRIC COOPERATIVE, INC.**,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 22-03-0161-CVA
Honorable Russell Wilson, Judge Presiding

Opinion by:  Lori I. Valenzuela, Justice

Sitting:  Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: November 19, 2025

AFFIRMED

Appellant Jesus Junior Garcia was injured after a catwalk collapsed under him in a cooling tower owned by appellee San Miguel Electric Cooperative, Inc. In two issues, Garcia argues the trial court erred by concluding San Miguel was entitled to summary judgment under Chapter 95 of the Texas Civil Practice and Remedies Code. Because the evidence did not raise a genuine issue of material fact to preclude summary judgment in San Miguel's favor, we affirm the judgment.

## BACKGROUND

In 2022, San Miguel contracted with Garcia's employer, Midwest Cooling Towers, to inspect and repair an 18-cell cooling tower used in San Miguel's operations. At that time, Garcia worked for Midwest as a carpenter. Midwest's work for San Miguel originally included, *inter alia*, structural repairs to cells L, M, N, and O of the cooling tower, but the parties eventually agreed that Midwest would also perform similar work on cell P. It appears to be undisputed that San Miguel's own employees did not enter the cooling tower and that the only people who did were outside contractors like Midwest that San Miguel hired to inspect and repair the tower.

Garcia spent the morning of March 8, 2022 working in the upper elevations of cell P. Although there were catwalks installed near the top of the cooling tower, Garcia testified that he did not use them to access or perform his work on this job.

When Garcia stopped working to take his lunch break, he decided to leave his tool belt on the fan deck at the top of cell P so he would not have to carry it down to the ground and bring it back up after lunch. He tried to use a catwalk to access the fan deck, but when he stepped on the catwalk's metal grating, it collapsed under him. He fell more than 40 feet into the basin of the cooling tower and suffered multiple injuries.

Garcia sued San Miguel, and San Miguel filed a traditional motion for summary judgment. In its motion, San Miguel argued that Garcia's premises liability claims were barred by Chapter 95 of the Texas Civil Practice and Remedies Code.[1] In response, Garcia argued that San Miguel had not established that Chapter 95 barred his claims as a matter of law.

---

[1] San Miguel's motion for summary judgment also argued that it was entitled to summary judgment on Garcia's negligent undertaking and gross negligence claims even if Chapter 95 does not apply here. Garcia did not challenge those arguments in either his summary judgment response or his briefing in this appeal.

The trial court granted San Miguel's motion for summary judgment without specifying any grounds. Garcia then timely filed this appeal.

## ANALYSIS

In his first issue, Garcia argues San Miguel did not conclusively establish that Chapter 95 applies to his claims. *See* TEX. CIV. PRAC. & REM. CODE §§ 95.001–.002; TEX. R. CIV. P. 166a(c). In his second issue, he argues that if Chapter 95 applies, genuine issues of material fact exist as to San Miguel's control over Midwest's work and its knowledge of the danger posed by the catwalk. TEX. CIV. PRAC. & REM. CODE § 95.003.

### *Standard of Review*

We review summary judgments de novo. *See SandRidge Energy, Inc. v. Barfield*, 642 S.W.3d 560, 566 (Tex. 2022). We accept evidence favorable to the nonmovant as true and resolve all doubts and make all reasonable inferences in his favor. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). The movant must establish that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023). A defendant that moves for traditional summary judgment must show the plaintiff's claim fails as a matter of law, either because the evidence conclusively disproved at least one required element of the plaintiff's claim or because the defendant conclusively established all the elements of an affirmative defense. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *see also Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024) (per curiam) (defendant bears initial burden to establish Chapter 95 applies). "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) (footnote omitted).

If the movant does not conclusively establish its right to judgment, then the nonmovant has no duty to respond. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). But if the movant satisfies its burden, the nonmovant must present evidence that raises a genuine issue of material fact to preclude summary judgment. *See Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.).

When a trial court grants a motion for summary judgment but its order does not specify its grounds for doing so, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### *Applicable Law*

Chapter 95 of the Texas Civil Practice and Remedies Code protects owners of "real property primarily used for commercial or business purposes" from liability for negligence claims brought:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE §§ 95.001–.002. If a property owner defendant establishes that Chapter 95 applies to a plaintiff's claims, the plaintiff cannot recover unless he shows that "the property owner exercise[d] or retain[ed] some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports" and "the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn." *Id.* § 95.003.

When Chapter 95 applies, section 95.003 is "a plaintiff's 'sole means of recovery' . . . and the plaintiff has the burden of proving both prongs of that section at trial." *Energen*, 642 S.W.3d at 514 (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015)). Accordingly, Chapter 95 is not an affirmative defense, and a defendant may assert its protections at trial—or, as here, in a motion for summary judgment—even if it did not raise that issue in its answer. *Gorman v. Ngo H. Meng*, 335 S.W.3d 797, 802–03 (Tex. App.—Dallas 2011, no pet.), *abrogated on other grounds by First Tex. Bank v. Carpenter*, 491 S.W.3d 729, 732–33 (Tex. 2016).

A summary judgment movant relying on Chapter 95 must conclusively establish that the plaintiff's claim: (1) is for damages caused by negligence or premises liability resulting in personal injury; (2) is asserted against an entity that owns real property primarily used for commercial or business purposes; (3) is asserted by a contractor or an employee of a contractor, and (4) arises from the condition or use of an improvement to real property where the contractor constructs, repairs, renovates, or modifies the improvement. *Los Compadres Pescadores L.L.C. v. Valdez*, 622 S.W.3d 771, 782 (Tex. 2021). "'For chapter 95 to apply, it is not enough that a dangerous condition' the defendant negligently failed to warn of or make safe 'existed on the premises. . . . Instead, the danger must arise from the condition (or use) of "an improvement" . . . on which the claimant was working.'" *Energen*, 642 S.W.3d at 511–12 (quoting *Valdez*, 622 S.W.3d at 783, alterations in original). "Chapter 95 only applies when the injury results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 567 (Tex 2016).

If a traditional summary judgment movant establishes that Chapter 95 applies to the claims, it must also establish as a matter of law that it lacked actual knowledge of the danger and/or that it did not exercise or retain control over the work. TEX. CIV. PRAC. & REM. CODE § 95.003;

*Energen*, 642 S.W.3d at 514–15. If the movant satisfies that burden, the nonmovant can avoid summary judgment by presenting evidence that raises a fact issue as to both actual knowledge and control. *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 133 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

### *Application*

#### *Did San Miguel Conclusively Establish that Chapter 95 Applies to Garcia's Claims?*

The parties agree that San Miguel owns the commercial real property at issue here, Garcia was an employee of a contractor, and Garcia's claims sound in negligence as that term is used in Chapter 95. *See* TEX. CIV. PRAC. & REM. CODE §§ 95.001–.002; *Energen*, 642 S.W.3d at 513 ("[A]lthough Chapter 95 distinguishes between claims for negligent activities and those for premises defects, it applies to both types of claims."). They disagree about whether San Miguel conclusively established that Garcia's claims arise from the condition or use of the same improvement that he was constructing, repairing, renovating, or modifying when his injuries occurred. TEX. CIV. PRAC. & REM. CODE § 95.002; *Valdez*, 622 S.W.3d at 782; *Ineos*, 505 S.W.3d at 567.

In its most recent analyses of this issue, the Texas Supreme Court explained that "when evaluating Chapter 95, the relevant improvement should be construed 'narrowly[.]'" *Paniagua*, 691 S.W.3d at 915 (quoting *Valdez*, 622 S.W.3d at 784). The court also rejected a construction of Chapter 95 that encompasses an "entire workplace" because that construction "would negate the statute's explicit, limited applicability to injuries 'that arise[] from the condition or use of an *improvement* to real property.'" *Valdez*, 622 S.W.3d at 784 (quoting TEX. CIV. PRAC. & REM. CODE § 95.002(2), alteration and emphasis in original). Nevertheless, the court has declined to divide

individual parts of a unified system "into separate, discr[ete] improvements." *Ineos*, 505 S.W.3d at 568 (internal quotation marks omitted).

In its motion for summary judgment, San Miguel argued that "[t]he 'improvement to real property' here was the cooling tower, all of which was within [Midwest's] scope of work." It contended that Midwest's work included "advis[ing] San Miguel Cooperative, Inc. if there were any issues inside the cooling towers and to fix any identified problems" and that Garcia's fall and injuries occurred "as the result of a real property condition within" that scope of work. As support for these propositions, San Miguel presented summary judgment evidence showing that the work for which it hired Midwest included specific repairs to four enumerated cells of the cooling tower, as well as "an inspection of the cooling tower except the mechanicals[.]" Because the summary judgment evidence lists the specific cell repairs and the more general "inspection" as separate line items, we must conclude that the parties intended to distinguish between them and to include both in the scope of Midwest's work. *See, e.g.*, *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022) ("The goal of contract construction is to ascertain the parties' intent as expressed in the language of the agreement.").

As Garcia notes, nothing in the record explicitly states that San Miguel hired Midwest to construct, repair, renovate, or modify catwalks in cell P or any other portion of the cooling tower. But as explained above, San Miguel's summary judgment evidence showed that with the exception of "the mechanicals,"[2] the entire cooling tower—and, by extension, the entirety of cell P where Garcia was working and was injured—fell within the scope of Midwest's work. Because the record unquestionably established that the catwalk was part of the cooling tower and cell P and that repairs to cell P were in the scope of Midwest's work, San Miguel's motion for summary judgment

---

[2] Garcia's own summary judgment evidence established that "the mechanicals" was limited to "the fan, the motor and the gearbox, and that's it."

showed that the catwalk was not so attenuated from Midwest's work that it constituted a separate, discrete improvement. *See Ineos*, 505 S.W.3d at 568. The motion was thus sufficient to shift the burden to Garcia to create a fact question on Chapter 95's applicability.

In his summary judgment response, Garcia argued and presented evidence that the catwalk was outside the scope of his work because he only used it to leave cell P at lunchtime, not to perform any of his assigned tasks. We have previously held, however, that Chapter 95 can apply even if the injury-causing condition is not directly within the scope of the plaintiff's work. *See Covarrubias v. Diamond Shamrock Refining Co., LP*, 359 S.W.3d 298, 300–03 (Tex. App.—San Antonio 2012, no pet.). In *Covarrubias*, the plaintiff was injured when a scissor lift he was riding struck a metal implement, "causing it to break and hydrocarbons to be released." *Id.* at 300. Although the metal implement "was not the object of Covarrubias's work, it was an unsafe part of his workplace" that he encountered when he was "accessing his work space." *Id.* at 302–03. Under those facts, we concluded Chapter 95 applied as a matter of law. *See id.*

It is true that the appellant in *Covarrubias* was being lifted toward his work and Garcia was walking away from his. However, both men were injured by the dangerous condition of an improvement to real property, and both men were exposed to that dangerous condition as they moved within the confines of their assigned work spaces in connection with their work.[3] Because we see no meaningful distinction between these fact patterns, we are bound by our analysis in *Covarrubias* to conclude that Garcia's summary judgment evidence did not create a genuine issue of material fact on Chapter 95's applicability. *See id.* The trial court therefore did not err by concluding San Miguel was entitled to judgment as a matter of law on that issue. TEX. R. CIV. P. 166a(c).

---

[3] During oral argument, Garcia's appellate counsel suggested that Garcia fell outside of either cell P or the cooling tower itself. The record does not support this assertion.

We overrule Garcia's first issue.

*Did San Miguel Conclusively Establish that It Lacked Actual Knowledge of the Danger and/or Did Not Retain Control of Midwest's Work?*

Because we have concluded that Chapter 95 applied to Garcia's claims, we must also determine whether San Miguel established as a matter of law either: (1) it did not exercise or retain control over the manner in which Midwest performed its work; or (2) it did not have actual knowledge of the danger posed by the catwalk. TEX. CIV. PRAC. & REM. CODE § 95.003. Because the actual knowledge prong is dispositive, we need not consider the control issue. *See* TEX. R. APP. P. 47.1.

In premises liability cases, "[a]ctual knowledge requires knowledge that the dangerous condition existed at the time of the accident[.]" *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 397 (Tex. 2016) (internal quotation marks omitted). "Awareness of a potential problem is not actual knowledge of an existing danger." *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010) (per curiam). "When a property owner only knows of general, potentially dangerous factors . . . as opposed to the specific factors that caused an injury, the property owner does not have actual knowledge" for the purpose of Chapter 95. *Souders v. Exxon Mobil Corp.*, No. 01-21-00593-CV, 2024 WL 1404707, at \*7 (Tex. App.—Houston [1st Dist.] Apr. 2, 2024, no pet.) (mem. op.). Where a showing of actual knowledge is required, evidence of constructive knowledge will not satisfy the plaintiff's evidentiary burden. *See, e.g.*, *Sampson*, 500 S.W.3d at 397; *see also City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (per curiam) (unlike actual knowledge, constructive knowledge "can be established by facts or inferences that a dangerous condition could develop over time").

In its motion for summary judgment, San Miguel argued and presented evidence that: (1) its employees never enter the cooling tower or use the catwalks; (2) the only people who do enter

the cooling tower and use the catwalks are outside experts that San Miguel hires to maintain the tower; and (3) an inspection of the cooling tower that occurred before Garcia's fall "did not detect any issues or make recommendation on future need of repair or replacement of the subject catwalk." If left uncontroverted, this evidence would not permit reasonable people to disagree about whether San Miguel had actual knowledge of the danger posed by the catwalk. *See* TEX. R. CIV. P. 166a(c); *City of Keller*, 168 S.W.3d at 816. Accordingly, it was sufficient to shift the evidentiary burden to Garcia.

Garcia did not identify any direct evidence that San Miguel knew the specific catwalk at issue was deteriorated or otherwise dangerous. *See Stewart*, 249 S.W.3d at 414–15; *Souders*, 2024 WL 1404707, at *7 (listing cases showing "that a property owner has actual knowledge of a danger or condition resulting in injury when he knows of the specific factors that cause the injury"). He argued, however, that the summary judgment record contained sufficient circumstantial evidence to support a finding of actual knowledge. As support for this assertion, he noted: (1) San Miguel had received an inspection report noting that the "tower structure" of many cells of the cooling tower, including cell P, was in "very poor condition"; and (2) a San Miguel employee testified that humidity inside the cooling tower could cause wood to rot and metal to rust. Garcia argued this evidence created a fact issue as to San Miguel's actual knowledge of the danger. He also argues in his reply brief that San Miguel engaged in "negligent ignorance" about the cooling tower's condition.

We disagree. "Circumstantial evidence establishes actual knowledge only when it either directly or by reasonable inference supports that conclusion." *Stewart*, 249 S.W.3d at 415 (internal quotation marks omitted); *see also Reyes*, 335 S.W.3d at 609 (describing facts in which circumstantial evidence showed the development of the danger was "a virtual certainty"). While

the testimony of San Miguel's employee showed that he had some general knowledge about the potential effects of humidity, it did not show that either he or San Miguel knew that any humidity-based rot or rust had affected the catwalk or would cause it to collapse. *See Reyes*, 335 S.W.3d at 609; *Souders*, 2024 WL 1404707, at \*7–11 (reversing jury verdict because plaintiff did not present legally sufficient evidence of actual knowledge); *contra Hernandez v. Amistad Ready Mix, Inc.*, 513 S.W.3d 773, 775–78 (Tex. App.—San Antonio 2017, no pet.) (holding fact issue existed on actual knowledge where defendant knew the specific materials it supplied to plaintiff were "rusted, corroded, and bent").

Similarly, the inspection report upon which Garcia relied stated only that cell P's wooden internal structure was in "poor condition." It did not state or imply that the poor condition of the tower's internal structure raised any concerns about the safety or stability of the catwalk or its metal grating. *See Reyes*, 335 S.W.3d at 609 (no evidence of actual knowledge where defendant knew creek might flood but did not know it actually had flooded); *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513–14 (Tex. 2008) (per curiam) (safety manual that warned against obstructing walking areas did not show defendant had actual knowledge of tripping hazard); *Harris County v. Lopez*, 665 S.W.3d 874, 882–83 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (prior complaints about elevator getting stuck did not show defendant had actual knowledge that the elevator's doors would malfunction). The report does not support Garcia's claim that San Miguel had actual knowledge or his implication that San Miguel's lack of knowledge resulted from its own negligent ignorance.

At most, the evidence in this case would allow reasonable people to infer that San Miguel knew that a dangerous condition might possibly develop over time; it would not allow reasonable people to infer that San Miguel actually knew the catwalk in question would collapse. *See, e.g.,*

*Sampson*, 500 S.W.3d at 397; *Reyes*, 335 S.W.3d at 609. The evidence upon which Garcia relied therefore established only constructive knowledge, not actual knowledge, and constructive knowledge is insufficient to satisfy Chapter 95. *See Souders*, 2024 WL 1404707, at \*7, \*11.

Because the evidence did not raise a fact issue about whether San Miguel had actual knowledge of the danger, the trial court did not err by concluding San Miguel was entitled to summary judgment on that prong of section 95.003. *See* TEX. CIV. PRAC. & REM. CODE § 95.003; TEX. R. CIV. P. 166a(c). We overrule Garcia's second issue.

## CONCLUSION

Having overruled Garcia's appellate issues, we affirm the trial court's judgment.

Lori I. Valenzuela, Justice