ACCEPTED
04-14-00097-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/19/2015 2:38:29 PM
KEITH HOTTLE
CLERK

Case No. 04-14-00097-CV

**IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
03/19/2015 2:38:29 PM
KEITH E. HOTTLE
Clerk

**LUIS ALFREDO ROSA AND MYRNA LIZZET ROSA,
Appellants**

**v.**

**MESTENA OPERATING, LLC,
Appellee**

**Appealed from the 79th District Court of Brooks County, Texas
The Honorable Richard C. Terrell, Judge Presiding**

**APPELLANTS' MOTION FOR EN BANC RECONSIDERATION**

LAW OFFICES OF
DAVID MCQUADE LEIBOWITZ, P.C.
David McQuade Leibowitz
SBN: 12179800
david@leibowitzlaw.com
Jacob Samuel Leibowitz
SBN: 24066930
jacob@leibowitzlaw.com
One Riverwalk Place
700 N. St. Mary's Street, Suite 1750
San Antonio, Texas 78205
T/210.225.8787;F/210.225.2567

*Attorneys for Appellants*

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………ii

Index of Authorities………………………………………………………………iii

Preliminary Statement……………………………………………………………...1

Statement of Facts……………………………………………………………….2

Reconsideration En Banc Should Be Granted…………………………………...5

  I.    By ignoring the plain language of chapter 95, the Panel imposed an impossible condition upon Rosa……………………………………………….5

 II.    The Panel's decision conflicts with the decisions of three courts of appeals and fails to apply a fundamental rule of statutory construction……………11

III.    The Panel ignored the plain language of the Restatement in finding that the common law did not support the Rosas' interpretation of chapter 95……………………………………………………………………………...13

IV.    The Panel should have considered all arguments that would have helped it to construe chapter 95 properly……………………………………………….15

Prayer………………………………………………………………………...17

Certificate of Compliance…………………………………………………………18

Certificate of Service………………………………………………………...19

Appendix……………………………………………………………………20

      Panel's Opinion...…………………………………………………TAB 1

      TEX. CIV. PRAC. & REM. CODE chp. 95………………………………TAB 2

      RESTATEMENT (SECOND) OF TORTS §414 (1965)…………………..…...TAB 3

# INDEX OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Alamo National Bank v. Kraus,*
    616 S.W.2d 908 (Tex.1981)………………………………………………..16

*Carpenter v. First Texas Bancorp,*
    No. 03-12-00004-CV, 2014 WL 2568494
    (Tex. App. –Austin, June 5, 2014, no pet.)(mem.op.)………………………...11

*City of Marshall v. City of Uncertain,*
    206 S.W.3d 97 (Tex. 2006)…………………………………………………9

*Dyall v. Simpson Pasadena Paper Co.,*
    152 S.W.3d 688
    (Tex.App. – Houston [14th Dist.] 2004, pet. denied)…………………...12, 13

*In re Lee,*
    411 S.W.3d 445 (Tex. 2013)…………………………………………………...7

*Kelly v. LIN Television of Tex., L.P.,*
    27 S.W.3d 564 (Tex. App. – Eastland 2000, pet. denied)…………………12

*Monsanto Co. v. Cornerstones Mun. Util. Dist.,*
    865 S.W.2d 937 (Tex. 1993)…………………………………………………...8

*Redinger v. Living, Inc.,*
    689 S.W.2d 415 (Tex. 1985)…………………………………………………13

*Rosa v. Mestena Operating, LLC*
    No. 04-14-00097-CV, 2014 WL 7183476
    (Tex. App. – San Antonio, December 17, 2014, n.p.h.)………..4, 5, 9, 10, 14

*Science Spectrum, Inc. v. Martinez,*
    941 S.W.2d 910 (Tex.1997)…………………………………………………16

*Smith v. Sewell,*
    858 S.W.2d 350, 354 (Tex. 1993)…………………………………………12

## STATUTES

TEX. CIV. PRAC. & REM. CODE chp. 95……………………………………*passim*

TEX. CIV. PRAC. & REM. CODE §95.002………………………………........5, 7, 8

TEX. CIV. PRAC. & REM. CODE §95.003………………………….............5, 7, 8

TEX. CIV. PRAC. & REM. CODE §95.003(1)…………………………4, 9, 10, 13

## RULES

TEX. R. APP. P. 9.4(i)……………………………………………………...18

TEX. R. APP. P. 9.4 (i) (1)………………………………………………......18

## OTHER AUTHORITIES

*Black's Law Dictionary* (9th ed. 2009)…………………………………………..8

RESTATEMENT (SECOND) OF TORTS §414 (1965)……………………………...13, 14

## PRELIMINARY STATEMENT

This is a case of first impression. It asks whether Mestena, a property owner under chapter 95 of the Texas Civil Practice & Remedies Code, can avail itself of the protections afforded property owners under that chapter where the improvements to the real property were made on *someone else's* property, not Mestena's; where the injury giving rise to the claim occurred on *someone else's* property, not Mestena's; and where Mestena did *not* have a contract with anyone for improvements to its own property. Mestena's *only* connection to the events giving rise to the claim was that conditions existing on Mestena's property led to the dangerous condition on the adjoining property where the injury occurred. The injured claimant so happened to be a contractor's employee making repairs to the adjoining property at the time of his injury. Had he been any other type of invitee at the time of the injury – a dinner guest, for example – Mestena would not have been able to claim the protections afforded property owners under chapter 95. The question on appeal, therefore, is whether this case should be resolved under chapter 95 or under the common law of premises liability.

The Panel hearing the case decided that chapter 95 applied. That decision constitutes an extraordinary circumstance warranting en banc reconsideration because:

- The Panel's construction of chapter 95 imposes upon an injured plaintiff a condition *impossible* to fulfill under the circumstances of this case.

- The Panel's construction of chapter 95 results in an *absolute* rule of no-liability for commercial property owners under the circumstances of this case.

- The Panel ignored the plain language of chapter 95 by focusing on words *not* appearing in the statute to the exclusion of the words appearing there.

- The Panel's decision conflicts with the decisions of *three* courts of appeals.

- The Panel failed to apply a fundamental rule of statutory construction.

- The Panel ignored the plain language of the Restatement (Second) of Torts in determining that the common law did not support the Rosas' interpretation of chapter 95.

- The Panel refused to consider all arguments that might help it to construe chapter 95 properly, settling instead upon an improper construction of the chapter on the basis of an alleged waiver.

For these reasons, a majority of the Court's members should vote to rehear this case en banc because it involves a matter of statutory construction and will affect all similarly situated litigants in the Fourth Court of Appeals District and beyond.

## STATEMENT OF FACTS

Luis Rosa was electrocuted while repairing electrical poles pursuant to a contract between Rosa's employer, Quality Pole Inspection & Maintenance Co., and AEP Texas Central Company.[1] AEP owned the electrical pole that Rosa was working on at the time of the accident *and* the utility easement on which the pole

---

[1] Record references to all factual statements appearing herein are set out in the Appellants' Brief and Reply Brief. Appellants have restated the pertinent facts to aid the Court, sitting en banc, in its consideration of this motion.

was located. The utility easement was located on property owned by Esteban Garcia.

Mestena held the mineral lease to the Garcia property along with its surface easement. Mestena used its surface easement to install a pump jack at one of its oil wells there. Next to the pump jack was a utility pole that Mestena owned and on that pole a utility box containing electrical equipment to power the pump jack. The utility pole was located 1,400 feet from the AEP pole that Rosa worked on and was connected to it by wires. Mestena's utility box also contained a device known as a lightning arrester, which served to direct the electrical surge from a lightning strike into the ground so as not to damage Mestena's equipment. At the time of the incident, the lightning arrester was inoperable, and as a result, the electrical surge from a lightning strike had nowhere to go but back to the AEP pole, leaving the wires there electrified at the time Rosa arrived to work on it. The Rosas contend that Mestena was negligent under the common law of premises liability in that it knew or should have known about the inoperable condition of the lightning arrester prior to the incident and taken corrective action.

As one can see, Mestena did *not* own or control the property where the accident occurred. AEP owned that property. Mestena did *not* have a contractual relationship with AEP, Quality Pole, Rosa, or anyone for that matter for repairs to property owned or controlled by it. The repairs were directed toward AEP's

property pursuant to a contract between Quality Pole and AEP, and the accident occurred there in connection with those repairs.

Despite having no relationship to the property where the accident occurred (other than alleged responsibility for the dangerous condition existing there), or the work performed on that property, Mestena argued that chapter 95 applied to this case. As a result, according to Mestena, the Rosas would have to demonstrate that Mestena had control over the operative details of Rosa's work at the time of the accident – even though the work was occurring on someone else's property pursuant to a contract to which Mestena was a stranger – and that it had actual knowledge of the dangerous condition existing at the workplace at the time of the accident -- even though the workplace was situated on someone else's property – before it could be held liable for Rosa's injuries.

The Panel agreed with Mestena, finding that chapter 95 applied to the case as a matter of law, and that the Rosas had failed to introduce any summary judgment evidence on the issue of control, as required by subsection 95.003(1) of the chapter. *Op*. at p. 10; Appendix, Tab 1.[2] The Panel concluded on that basis

---

[2] On March 4, 2015, the Panel informed the Rosas that it had changed its written opinion to delete the five italicized words appearing in the following statement: "Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured *on the property owner's property* while performing repairs or construction." The opinion on the Court's website reflects this change (*see Op*. at p. 4); whereas, the Westlaw opinion does *not* reflect this change. *See Rosa v. Mestena Operating, LLC*, No. 04-14-00097-CV; 2014 WL 7183476, at *2 (Tex. App. – San Antonio,

4

that the trial court did not err in granting summary judgment in Mestena's favor.

*Id.*

## RECONSIDERATION EN BANC SHOULD BE GRANTED

**I. By ignoring the plain language of chapter 95, the Panel imposed an impossible condition upon Rosa.**

In rejecting the Rosas' argument that chapter 95 did not apply to this case, the Panel noted that the express language of sections 95.002 and 95.003 did *not* require that there be a contractual relationship between the property owner and a contractor for improvements to the property owner's property before the property owner will be afforded the statute's protection. *Op*. at p.7-8.

This conclusion can lead to some astonishing results. For example, if a commercial property owner fails to maintain a building on his property, and a wall of that building collapses injuring a person on the neighboring property, the commercial property owner will be afforded chapter 95 protections under the Panel's interpretation if the person injured so happened to be a contractor's employee working on improvements to the neighboring property at the time of his injury. That is, no matter how negligent the commercial property owner may have been with respect to maintaining the building on his property, the injured employee will *not* be able to maintain a cause of action against the property owner unless he

December 17, 2014, n.p.h.). As a result, the Rosas will cite to the Panel's opinion as it appears on the Court's website instead of the Westlaw opinion.

5

can show that the commercial property owner controlled the operative details of the work taking place on the neighboring property, and that the commercial property owner had actual, as opposed to constructive, knowledge of the dangerous condition on the neighboring property.

This is an *impossible* requirement. The improvements to the neighboring property would have been carried out pursuant to a contract between the neighboring property owner and its contractor. In all likelihood, the commercial property owner next door did not know about the contract prior to work beginning under it, and if he did, he probably did not give the matter a whole lot of thought. He definitely would *not* have involved himself in the details of the work taking place next door, and if he had, he would have been told to mind his own business under the threat of a suit for tortious interference.

On the other hand, had the injured person been a dinner guest arriving for dinner on the neighboring property when the wall fell on him, the commercial property owner would not have been able to seek refuge under chapter 95 under the Panel's interpretation. Why the Legislature would subject contractor and subcontractor employees to such disparate treatment under these circumstances in relation to other categories of invitees makes no sense, and it's hard to believe this is what the Legislature had in mind when it enacted chapter 95 in 1996 as part of an extensive tort-reform package.

6

Legislative intent, of course, is what a court attempts to ascertain when it construes a statute, and to do that a court looks to the statute's plain language. *In re Lee*, 411 S.W.3d 445, 451 (Tex. 2013). The Panel here was correct when it said that chapter 95 does not expressly impose a contractual relationship between the property owner and contractor as a precondition to the statute's applicability. Those precise words do not appear in the chapter. However, by focusing on words *not* appearing in the statute in an effort to ascertain legislative intent, the Panel failed to give due effect to those words *actually* appearing there.

Section 95.002 (titled "Applicability") identifies the categories of persons to whom the chapter applies (i.e., property owners, contractors, and subcontractors) and the types of claims to which the chapter applies (i.e., claims for personal injury, death, or property damage arising from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement). *See* Appendix, Tab 2. Section 95.003 (titled "Liability for Acts of Independent Contractors") also identifies categories of persons. It identifies the categories of persons to whom a property owner would *not* be liable unless certain conditions were met (i.e., contractors, subcontractors, and employees of contractors or subcontractors who construct, repair, renovate, or modify an improvement to real property). *Id*. In attempting to ascertain the legislative intent underlying the chapter, as based on the statute's

plain language, one has to ask why does the statute address these categories of persons and not others, and why does the statute limit property owner liability vis-à-vis these categories of persons rather than others (e.g., dinner guests).

The Panel never addressed these questions in its opinion, even though they are as much a part of a "plain language" analysis as is reviewing two sections of the chapter to see whether they contain the word "contract." Since the words "contractor" and "subcontractor" are not defined in the chapter, a court must use their ordinary meaning when attempting to ascertain legislative intent from the plain language of the two sections. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). In that regard, a "contractor" is "a party to a contract," or more specifically, "one who contracts to do work or provide supplies for another." *Black's Law Dictionary* (9th ed. 2009). A "subcontractor" is "[o]ne who is awarded a portion of an existing contract by a contractor, esp. a general contractor." *Id.*

Although the word "contract" does not expressly appear in sections 95.002 and 95.003, it nevertheless forms an integral part of those two sections by virtue of the reoccurrence of the words "contractor" and "subcontractor" throughout the chapter. Ascertaining legislative intent on the basis of a statute's plain meaning requires one to presume that *every* word of the statute has been included for a reason, and that effect be given to *every* sentence, clause, *and* word of the statute

so that no part of it is rendered superfluous. *City of Marshall v. City of Uncertain,* 206 S.W.3d 97, 105 (Tex. 2006). If contractors contract, and if subcontractors perform a portion of the work required under a contractor's *existing* contract, as their definitions indicate, it follows that the statutory limitation on property owner liability vis-à-vis contractors and subcontractors presupposes the existence of a contract between the property owner and contractor for work on the property owner's property.

Similarly, as to subsection 95.003(1), that subsection requires, as a precondition to property owner liability, that the property owner exercise or retain some control over the manner in which the work was performed, other than the right to order the work to start or stop, or to inspect progress, or to receive reports. TEX. CIV. PRAC. & REM. CODE §95.003(1). The Rosas argued that the plain language of the subsection also contemplated a contractual relationship between the property owner and a contractor for improvements to the property owner's property, and that in the absence of such a relationship, where the improvements were being made to *someone else's* property, the chapter (and its subsection) did not apply.

In response, the Panel noted that control sufficient to establish liability under subsection 95.003(1) can be proven *either* by evidence of an agreement that explicitly assigns the property owner a right of control *or* by evidence that the

property owner actually exercised control over the manner in which the independent contractor's work was performed. *Op.* at p. 8. Since actual control, as well as contractual control, can establish property owner liability under subsection 95.003(1), the Panel rejected the Rosas' argument. *Id.*

Contrary to the Panel's assertion, the fact that actual control can establish property owner liability does *not* discredit the Rosas' argument. What the Panel failed to note is that the exercise of actual control does not arise in a vacuum but presupposes a contractual relationship between the property owner and a contractor for improvements to the property owner's property. If there were no contract, and the improvements were being made to someone else's property, the property owner is not going to concern itself with how the work is progressing and is not going to exercise actual control over that work. In this case, the work took place on AEP's property pursuant to a contract between AEP and Quality Pole. Mestena had no reason to concern itself with that work and did not even know about the work until the day of the injury.

Further, Mestena had no *basis* for exercising actual control, even if it had wanted to. The work was on *someone else's* property and did *not* involve Mestena. Had Mestena attempted to exercise actual control over the work, it, too, like the owner of the dilapidated building, would have been told to mind its own business. It is only when actual control is more than a theoretical possibility and can arise by

virtue of work on the property's owner's own property pursuant to a contract between the property owner and a contractor that actual control can serve as a basis for property owner liability.

When the work occurs on *someone else's* property, and the prospect of the property owner exercising actual control over that work is nonexistent, as in this case, the injured employee's inability to demonstrate actual control should not exonerate the property owner from liability under chapter 95. Rather, it shows that chapter 95 was *not* intended to apply to that particular situation, and that the property owner's liability should be adjudicated under the common law of premises liability.

## II. The Panel's decision conflicts with the decisions of three courts of appeals and fails to apply a fundamental rule of statutory construction.

In *Carpenter v. First Texas Bancorp*, No. 03-12-00004-CV, 2014 WL 2568494, at *2 (Tex. App. – Austin, June 5, 2014, no pet.)(mem.op.), the Third Court of Appeals held that in the absence of summary judgment evidence showing that there existed a contract between the property owner and the claimant for repair work to be performed by the claimant, the property owner had failed to show that the claimant was a "contractor" under chapter 95, and therefore had failed to show the applicability of the chapter to the case. Here, the Panel expanded the scope of chapter 95 by dispensing with the requirement of a contract altogether.

11

In *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex.App. – Houston [14th Dist.] 2004, pet. denied), the Fourteenth Court of Appeals discussed the legislative intent underlying chapter 95 by noting that "[chapter 95] was enacted because the legislature recognized that property owners often want to *hire* someone with expertise to repair or renovate some improvement on *their* property" (emphasis added). *See also Kelly v. LIN Television of Tex., L.P.*, 27 S.W.3d 564, 570 (Tex. App. – Eastland 2000, pet. denied). Unlike the Eleventh and Fourteenth Courts of Appeals, the Panel did not limit chapter 95 to situations where property owners hire someone to repair or renovate improvements on their property. Instead, the Panel *expanded* the scope of the chapter to encompass situations where there is *no* relationship between the property owner and the injured employee, other than the fact that the property owner was the alleged tortfeasor.

By expanding the scope of chapter 95, the Panel violated a fundamental rule of statutory construction. If a statute deprives a person of a common-law right, the statute will be strictly construed and *not* extended beyond its plain meaning or applied to cases *not* clearly within its purview. *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993). Here, the Panel's interpretation of chapter 95 deprived Rosa of his common-law right to bring a premises-liability claim against a property owner for creating a dangerous condition on the adjoining property where Rosa worked for the sole reason that Rosa was a contractor's employee at the time of the injury

rather than another type of invitee. In doing this, the Panel failed to strictly construe chapter 95 and instead applied it to a matter not clearly within its purview.

**III. The Panel ignored the plain language of the Restatement in finding that the common law did not support the Rosas' interpretation of chapter 95.**

Subsection (1) of section 95.003, with its requirement of control as a precondition for property owner liability, is a codification of the Supreme Court's holding in *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex. 1985), which adopted section 414 of the Restatement (Second) of Torts and its comments. *See Dyall v. Simpson Pasadena Co.,* 152 S.W.3d 688, 699 (Tex. App. – Houston [14th Dist.] 2004, pet. denied).

Section 414 is contained in chapter 15 of the Restatement (Second) of Torts, which is titled "Liability of an *Employer* of an Independent Contractor." Section 414 is titled "Negligence in Exercising Control Retained by *Employer*" and reads as follows:

> *One who entrusts work to an independent contractor*, but who *retains* the control of any part of the work, is subject to liability for physical harm to others, for whose safety the *employer* owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts §414 (1965) (emphasis added); Appendix, Tab 3.

Comment (a) of the section refers to the party "who entrusts work to an independent contractor" as the "employer of an independent contractor." Comment (c) of the section discusses the degree of control that the "employer" of

13

the independent contractor must have retained over the contractor's work before the rule set out in section 414 applies.

A property owner cannot *entrust* work to an independent contractor in the absence of a contractual relationship. A property owner cannot *employ* an independent contractor in the absence of a contractual relationship. And a property owner cannot *retain* control over an independent contractor's work unless the work takes place on the property owner's own property pursuant to a contract between the property owner and the contractor.[3] Accordingly, section 414 and its comments support the Rosas' contention that chapter 95 requires a contractual relationship between the property owner and contractor for improvements to the property owner's property.

The Panel, however, thought otherwise. After agreeing with the Rosas as to the common-law underpinnings for chapter 95, the Panel went on to state, without discussion, that the common law did *not* support the Rosas' interpretation of the chapter. *Op*. at p. 9. Unfortunately, the Panel never explained how it arrived at that conclusion.

---

[3] It would be *impossible* for a property owner to retain control over work occurring on someone else's property pursuant to a contract to which the property owner is a stranger. A property owner can only *retain* control if it has a right to exercise some degree of control in the first place.

**IV. The Panel should have considered all arguments that would have helped it to construe chapter 95 properly.**

The Panel refused to consider one of the Rosas' arguments, saying that the Rosas had failed to present the argument to the trial court in their summary judgment response and therefore had waived it on appeal. *Op*. at p. 10. By saying this, the Panel, in effect, said that it was entitled to construe chapter 95 improperly if that is where the arguments presented in the trial court led it. It did *not* matter whether arguments first presented on appeal might allow it to construe the statute properly. All that mattered were the arguments presented in the trial court.

One would think that in matters of statutory construction, a court of appeals would appreciate all the help it could get regardless of when the help was rendered. After all, a court's decision in matters of statutory construction affects not only the parties to the lawsuit but all other similarly situated parties in the appellate district and beyond. Why should those parties' rights depend on an alleged waiver in another case?

In this case, the Panel's decision resulted in the promulgation of a new rule of law: henceforth, a commercial property owner will *never* be liable for injuries resulting from dangerous conditions on neighboring property caused by the commercial property owner if the person injured on the neighboring property happened to be a contractor, a subcontractor, or an employee of a contractor or subcontractor engaged in improvements to the neighboring property. This is the

effect of the Panel's ruling since a commercial property owner will *never* have any control over work occurring on someone else's property in the absence of a contractual relationship. The Panel's decision, in effect, constitutes an *absolute* bar to liability under the circumstances of this case. This is a dramatic expansion in the scope of chapter 95 and a deprivation of a common-law right.[4]

The Rosas had argued that chapter 95 did not apply to this case because the real property to which the improvements were made was *not* the same real property that qualified Mestena to be a "property owner" under the chapter. This argument did *not* require the introduction of new evidence on appeal. It was strictly a legal argument. Mestena did *not* raise the issue of waiver in its response brief. Rather, it was the Panel itself that raised the issue during oral argument. Before authorizing such a dramatic expansion in the law, the Panel should have considered *all* arguments presented it by the parties, as well as any other arguments that might have occurred to it, in an effort to construe chapter 95 properly.

---

[4] *See, e.g., Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910 (Tex.1997) (holding that the lessee of the premises can be liable to a person injured on the adjacent premises if the lessee created the condition on the adjacent premises causing the injury); *Alamo National Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981) (holding that a building owner owed a duty of care to persons on adjoining property to use its property so as not to injure those persons). The Panel's holding would abrogate these rulings in cases where the person injured on the adjoining property so happened to be a contractor, subcontractor, or an employee of a contractor or subcontractor.

## **PRAYER**

Rosas ask that the Court, sitting en banc, grant this motion for reconsideration; that it withdraw the December 17, 2014, opinion and judgment; and that it issue a new opinion and judgment reversing the trial court's summary judgment in favor of Mestena. Rosas request such further relief to which they may be entitled.

Respectfully submitted,

**Law Offices of David McQuade Leibowitz, P.C.**
One Riverwalk Place
700 N. St. Mary's Street, Suite 1750
San Antonio, Texas 78205
Telephone: (210) 225-8787
Facsimile: (210) 225-2567
E-mail: david@leibowitzlaw.com

/s/ David McQuade Leibowitz
DAVID MCQUADE LEIBOWITZ
SBN: 12179800
JACOB SAMUEL LEIBOWITZ
SBN: 24066930

*ATTORNEYS FOR APPELLANTS*

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i), the undersigned hereby certifies that this brief contains 4,453 words, excluding those parts of the brief specifically exempted by Tex. R. App. P. 9.4(i)(1), as indicated by the word count of the computer program used to prepare the brief.

/s/   David McQuade Leibowitz
DAVID MCQUADE LEIBOWITZ

18

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document was served via e-service and/or facsimile transmission and/or certified mail, return receipt requested, to the following persons on this the 19th day of March 2015:

Ms. Jacqueline M. Stroh
jackie@strohappellate.com
THE LAW OFFICES OF JACQUELINE M. STROH, P.C.
10101 Reunion Place, Suite 600
San Antonio, Texas 78216

Mr. Mike Mills
mkmills@atlashall.com
Ms. Susan Sullivan
ssullivan@atlashall.com
ATLAS, HALL & RODRIGUEZ, L.L.P.
818 W. Pecan
McAllen, Texas 78501

*Attorneys for Appellee*
*Mestena Operating, L.L.C.*

/s/ David McQuade Leibowitz
DAVID MCQUADE LEIBOWITZ

Case No. 04-14-00097-CV

# IN THE COURT OF APPEALS
# FOURTH COURT OF APPEALS DISTRICT
# SAN ANTONIO, TEXAS

---

**LUIS ALFREDO ROSA AND MYRNA LIZZET ROSA,**
**Appellants**

**v.**

**MESTENA OPERATING, LLC,**
**Appellee**

---

**Appealed from the 79th District Court of Brooks County, Texas**
**The Honorable Richard C. Terrell, Judge Presiding**

---

**APPELLANTS' APPENDIX**

---

| Tab | Description |
| --- | --- |
| 1 | Panel's opinion |
| 2 | TEX. CIV. PRAC. & REM. CODE chp. 95 |
| 3 | Restatement (Second) of Torts §414 (1965) |

# Tab 1



# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00097-CV

Luis Alfredo **ROSA** and Myrna Lizzet Rosa,
Appellants

v.

**MESTENA OPERATING, LLC,**
Appellee

From the 79th Judicial District Court, Brooks County, Texas
Trial Court No. 13-12-16486-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Marialyn Barnard, Justice

Delivered and Filed:  December 17, 2014

AFFIRMED

After he suffered an on-the-job injury, Luis Alfredo Rosa and his wife, Myrna Lizzet Rosa, brought claims for negligence and premises liability against property owner Mestena Operating, LLC. Mestena moved for traditional and no-evidence summary judgment on multiple grounds, including chapter 95 of the Texas Civil Practice and Remedies Code, which governs property owner liability for the acts of independent contractors. The trial court granted the summary judgment based on chapter 95 and rendered a take-nothing judgment. On appeal, the Rosas argue

the trial court erred in granting summary judgment against them because chapter 95 does not apply to their claims. We conclude that it does apply, and therefore, affirm the trial court's judgment.

BACKGROUND

On September 14, 2009, Mr. Rosa was injured at work while performing maintenance on wooden electrical poles situated on real property located in Brooks County, Texas, and owned by Esteban Garcia. AEP Texas Central Company, a utility company, had an easement on the Garcia property. AEP had contracted with Quality Pole Inspection and Maintenance, Inc., to perform maintenance on its poles on the Garcia property. Mr. Rosa was employed by Quality Pole.

Mestena, an operator of oil and gas wells, holds a mineral lease on the Garcia property. Mestena operates numerous oil and gas wells on the Garcia property. Mestena did not have a contractual relationship with Quality Pole.

In their pleadings, the Rosas alleged that Mr. Rosa, while working on a pole on AEP's easement, came into contact with an energized ground wire and suffered an electric shock. The ground wire was connected to equipment on Mestena's mineral lease. The Rosas' theory was that Mestena's equipment—specifically a lightening arrester—had malfunctioned and caused the ground wire to be energized when it should not have been. The allegedly faulty equipment was located 1400 feet—almost the length of four football fields—away from the site where Mr. Rosa was injured. The Rosas asserted Mestena knew or should have known about the danger posed by the energized ground wire.

After conducting discovery, Mestena moved for traditional and no-evidence summary judgment. Mestena asserted it was a property owner under chapter 95, and therefore, was entitled to the protection afforded by that statutory scheme. Mestena further argued that the exception to chapter 95's general rule of non-liability did not apply here because there was no evidence that

Mestena had actual knowledge of the alleged dangerous condition that caused Mr. Rosa's injuries and exercised or retained any control over the work done by Mr. Rosa.

In response, the Rosas argued that chapter 95 did not apply to Mestena. According to the Rosas, chapter 95 applied "only to those situations where a property owner hires someone with expertise to repair or renovate some improvement on [its] property and that individual is injured while performing work on the property owner's premises." The Rosas further argued,

> Mestena did *not* contract with anyone in this case, either AEP or Quality Pole, to repair, renovate, or modify any improvement to real property owned by it. Rather, the contract in question involved AEP, as the owner of wooden electrical poles and possessor of a utility easement, who contracted with Quality Pole to repair and renovate its poles located on its easement. Mestena was a stranger to that contract. Accordingly, Chapter 95 does *not* apply to Mestena, and Mestena is not entitled to either a traditional or no-evidence summary judgment under the statute.

(emphasis in original). Additionally, the Rosas argued (1) the summary judgment evidence raised a genuine issue of material fact as to whether Mestena had actual or constructive knowledge of the dangerous condition, and (2) they were not required to introduce evidence on the element of control to avoid summary judgment because chapter 95 does not apply to this case.

The trial court granted the summary judgment, concluding not only that chapter 95 applied to the circumstances of this case, but also that the Rosas produced no evidence raising a fact issue as to the exception articulated in chapter 95. The Rosas appealed.

### STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional summary judgment motion, the movant bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *id.* at 215-16. In a no-evidence summary judgment motion, the movant asserts there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX. R. CIV.

P. 166a(i). In responding to a no-evidence summary judgment motion, the nonmovant has the burden to produce evidence that raises a genuine issue of material fact on the challenged elements. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant fails to meet his burden to produce evidence that raises a genuine issue of material fact on the challenged elements, then the trial court must grant the motion. TEX. R. CIV. P. 166a(i). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

When, as here, the order granting summary judgment specifies the grounds on which summary judgment was granted, we review the summary judgment on those grounds. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). However, if the summary judgment is not sustainable on the grounds specified by the trial court, we may, in the interest of judicial economy, review other grounds properly preserved by the movant but not considered by the trial court. *See id.*

## CHAPTER 95

Chapter 95 of the Texas Civil Practice and Remedies Code was enacted in 1996 as part of a sweeping tort-reform package. *Montoya v. Nichinrin-Flex U.S.A., Inc.*, 417 S.W.3d 507, 510-11 (Tex. App.—El Paso 2013, no pet.); *Moreno v. BP America Production Co.*, No. 04-08-00036-CV, 2008 WL 4172248, at *1 (Tex. App.—San Antonio 2008, pet. denied). Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured while performing repairs or construction. Under chapter 95, a property owner is not liable for any injury to a contractor, a subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property unless: (1) the property owner exercises or retains control over the manner in which the work is performed; and (2) the property owner had actual knowledge of the

danger or condition resulting in the injury. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2011).

At trial, the defendant property owner has the burden to establish that chapter 95 applies to the plaintiff's claim. *Montoya*, 417 S.W.3d at 511; *Covarrubias v. Diamond Shamrock Refining Co.*, 359 S.W.3d 298, 301 (Tex. App.—San Antonio 2012, no pet.). Once the property owner has shown that chapter 95 applies to the claim, the burden shifts to the plaintiff to establish that his claim falls under the exception articulated in section 95.003. *Montoya*, 417 S.W.3d at 511; *Covarrubias*, 359 S.W.3d at 301. To establish the exception in the summary judgment context, the plaintiff must present evidence raising a material fact issue on both prongs of section 95.003: (1) that the property owner exercised or retained some control over the work, and (2) that the property owner had actual knowledge of the danger or condition resulting in the injury. *Covarrubias*, 359 S.W.3d at 301; *Gorman v. Meng*, 335 S.W.3d 797, 802-03 (Tex. App.—Dallas 2011, no pet.).

Chapter 95 defines a "property owner" as a person or entity that owns real property primarily used for commercial or business purposes. TEX. CIV. PRAC. & REM. CODE ANN. § 95.001(3) (West 2011). In this case, no one disputes that Mestena, a mineral lease owner, is a property owner as defined by section 95.001(3). *See Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 397 (Tex. App.—El Paso 2008, pet. denied) (concluding mineral lessee qualified as a property owner under chapter 95); *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 84 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding defendant was a property owner under chapter 95 because it held the mineral leases pertaining to the premises and under well-settled law a mineral lease conveys a fee simple determinable interest in real property).

## DISCUSSION

On appeal, the Rosas argue that the trial court erred in granting summary judgment because chapter 95 does not apply in this case. In their summary judgment response, the Rosas argued that

"chapter 95 applies only in those situations where a property owner hires someone with expertise to repair or renovate some improvement on their property and that individual is injured while performing work on the property owner's property." According to the Rosas, section 95.003 contemplates a "contractual relationship" between a property owner and a contractor for improvements to real property owned by it. The Rosas emphasize that the only contract in this case was the contract between AEP and Quality Pole to renovate and repair poles; Mestena was a stranger to this contract. The Rosas further argue that because Mestena did not have a contractual relationship with a contractor for improvements to real property owned by it, chapter 95 does not apply to this case.[1] Mestena counters that chapter 95, by its plain language, applies to any negligence claim against a property owner for injury to a contractor or a subcontractor or an employee of a contractor or subcontractor, even in the absence of a contract between the property owner and the contractor.

In construing a statute our fundamental objective is to determine and give effect to the legislature's intent. *In re Lee*, 411 S.W.3d 445, 450-51 (Tex. 2013) (orig. proceeding). As the Texas Supreme Court has instructed, "[t]he plain language of the statute is the surest guide to the legislature's intent." *Id.* at 451. If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "When a statute is clear and unambiguous, we do not resort to extrinsic aides such as legislative history to interpret the statute." *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013). We may presume, however, that the legislature acted with

---

[1] In their reply brief, the Rosas attempted to clarify their argument, asserting that chapter 95 requires "*either* a direct contractual relationship between the claimant's employer and the property owner *or* that there be privity of contract between the claimant's employer and the property owner." (emphasis in original).

knowledge of the existing law and with reference to it. *Id.*; *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).

We now examine the pertinent language of chapter 95, which is found in sections 95.002 and 95.003. Section 95.002, the section of the statute that expressly governs the applicability of chapter 95, does not limit the application of the statute in the manner described by the Rosas. It provides:

**§ 95.002. Applicability**

This chapter applies only to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.002 (West 2011). Nothing in the express language of chapter 95.002 indicates that property owners like Mestena, who did not have a contractual relationship with a contractor, are excluded from the protection afforded by the statute.

Section 95.003 provides:

**§ 95.003. Liability for Acts of Independent Contractors**

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2011). Like section 95.003, section 95.002 makes no mention of a contractual relationship between the property owner and a contractor.

The Rosas nevertheless contend chapter 95's plain language, its legislative history, and the former law all show that chapter 95 contemplates a contractual relationship between the property owner and a contractor. With regard to the statute's language, the Rosas direct our attention to section 95.003 which provides that a property owner is not liable to an employee of a contractor "unless the property owner exercises some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports." The Rosas argue that the phrase "control over the manner in which the work is performed" imposes a requirement that a contractual relationship exist between the property owner and the contractor. For support, the Rosas rely on *Johnston v. Oiltanking Houston, L.P.*, 367 S.W.3d 412, 416 (Tex. App.—Houston [14th Dist.] 2012, no pet.), where the appellate court explained that "[a] party can prove control through evidence of an agreement that 'explicitly assigns the premises owner a right to control' *or* by evidence that the 'owner actually exercised control over the manner in which the independent contractor's work was performed.'"(emphasis added). Contrary to the Rosas's position, *Johnston* does not stand for the proposition that proof of a contract between a premises owner and a contractor is the only way to establish that a premises owner exercised control. Instead, *Johnston* recognizes that the exercise of control may also be proven through the actual exercise of control. *Id.* at 416-17. We, therefore, reject the Rosas's argument that the statute's plain language requires the existence of a contract between the property owner and a contractor.

The Rosas also contend the former law shows that chapter 95 requires a contract between the premises owner and a contractor. Before the adoption of chapter 95, a Texas property owner

was generally not liable for injuries sustained by an independent contractor because the property owner had no duty to see that an independent contractor performed his work in a safe manner. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1989) (citing *Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex. 1976)). However, in *Redinger*, the Texas Supreme Court adopted section 414 of the Restatement (Second) of Torts, which provided an exception to the general rule when a premises owner or a general contractor exercised some control over the work of a subcontractor or an independent contractor. *Id.* Chapter 95, and more specifically section 95.003, codified *Redinger*'s requirement that as a prerequisite to liability a property owner must exercise or retain some control over the manner in which the work is performed. *Ellwood Texas Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Sinegal v. Ryan Marine Serv.*, 712 F.Supp.2d 597, 602 (S.D. Tex. 2008). Additionally, section 95.003 further limited a property owner's liability by requiring a plaintiff to prove that the owner had actual knowledge—as opposed to constructive knowledge—of a dangerous condition. *Johnston*, 367 S.W.3d at 416; *Ellwood*, 214 S.W.3d at 700; *Sinegal*, 712 F.Supp.2d at 602. After considering the former law, we cannot say it supports the conclusion that chapter 95 requires the existence of a contract between the property owner and a contractor.

The Rosas finally contend the legislative history shows that chapter 95 contemplates a contractual relationship between the property owner and a contractor. The Rosas, however, do not argue that chapter 95 is ambiguous. Under these circumstances, we are not permitted to resort to legislative history to construe the statute. *See Rodriguez*, 399 S.W.3d at 137 (noting that when a statute is clear and unambiguous as written, courts are not permitted to resort to legislative history to construe the statute). But even if we could consider this argument, the result would be no different. The Rosas's legislative history argument focuses on a comment made by one legislator. "Statements made during the legislative process by individual legislators or even a unanimous

legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011).

We conclude that, by its plain language, chapter 95 is not limited to situations where a contract exists between the property owner and a contractor. We, therefore, hold that chapter 95 applied to the situation presented in this case.

The Rosas also argue on appeal that chapter 95 did not apply here because the real property to which the improvements were made was not the same real property that qualified Mestena to be a property owner. However, because this argument was not presented in the Rosas's summary judgment response, we may not consider it on appeal. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c).

CONCLUSION

Under the plain language of the statute, chapter 95 applied to this case. Thus, the trial court correctly concluded that Mestena met its summary judgment burden to show that chapter 95 applied. Because Mestena met its burden, the burden shifted to the Rosas to raise a material fact issue as to whether (1) Mestena exercised or retained some control over the manner in which the work was performed, and (2) Mestena had actual knowledge of the danger or condition resulting in the injury and failed to adequately warn. As the Rosas acknowledged in the trial court, and now concede on appeal, no evidence existed that Mestena exercised or retained control over the manner in which Rosa's work was performed. Therefore, the trial court did not err in granting summary judgment under chapter 95. Because we have determined that the summary judgment was sustainable on the grounds specified in the judgment, we need not review the other summary judgment grounds preserved by Mestena but not ruled on by the trial court.

The trial court's judgment is affirmed.

Karen Angelini, Justice

# Tab 2

Vernon's Texas Statutes and Codes Annotated
Civil Practice and Remedies Code (Refs & Annos)
Title 4. Liability in Tort
Chapter 95. Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery
(Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 95.001

§ 95.001. Definitions

Currentness

In this chapter:

(1) "Claim" means a claim for damages caused by negligence, including a counterclaim, cross-claim, or third party claim.

(2) "Claimant" means a party making a claim subject to this chapter.

(3) "Property owner" means a person or entity that owns real property primarily used for commercial or business purposes.

**Credits**
Added by Acts 1995, 74th Leg., ch. 136, § 2, eff. Sept. 1, 1996.

Notes of Decisions (10)

V. T. C. A., Civil Practice & Remedies Code § 95.001, TX CIV PRAC & REM § 95.001
Current through the end of the 2013 Third Called Session of the 83rd Legislature

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 4. Liability in Tort
      Chapter 95. Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 95.002

§ 95.002. Applicability

Currentness

This chapter applies only to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

**Credits**
Added by Acts 1995, 74th Leg., ch. 136, § 2, eff. Sept. 1, 1996.

Notes of Decisions (30)

V. T. C. A., Civil Practice & Remedies Code § 95.002, TX CIV PRAC & REM § 95.002
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 4. Liability in Tort
      Chapter 95. Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery
      (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 95.003

§ 95.003. Liability for Acts of Independent Contractors

Currentness

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

**Credits**
Added by Acts 1995, 74th Leg., ch. 136, § 2, eff. Sept. 1, 1996.

Notes of Decisions (111)

V. T. C. A., Civil Practice & Remedies Code § 95.003, TX CIV PRAC & REM § 95.003
Current through the end of the 2013 Third Called Session of the 83rd Legislature

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 4. Liability in Tort
      Chapter 95. Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery
      (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 95.004

§ 95.004. Evidence Admissible

Currentness

In the trial of a case against a contractor, subcontractor, or property owner for personal injury, property damage, or death to a contractor, a subcontractor, or an employee of a contractor or subcontractor that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement, the trial judge, outside the presence of the jury, shall receive evidence of workers' compensation benefits paid and shall deduct the amount of the benefits from the damages awarded by the trier of fact. The deduction for workers' compensation benefits does not apply unless the workers' compensation carrier's subrogation rights have been waived.

**Credits**
Added by Acts 1995, 74th Leg., ch. 136, § 2, eff. Sept. 1, 1996.

V. T. C. A., Civil Practice & Remedies Code § 95.004, TX CIV PRAC & REM § 95.004
Current through the end of the 2013 Third Called Session of the 83rd Legislature

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Tab 3

*Chapter 15. Liability of an Employer of an Independent Contractor*
*Topic 1. Harm Caused by Fault of Employers of Independent Contractors*
*§ 414 Negligence in Exercising Control Retained by Employer*

- **One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.**

See Reporter's Notes.

---

**Comment:**

*a.* If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

*b.* The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so.

*c.* In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.